### The State vs. Calvin and others.

#### *Indictment passing Counterfeit Bank Notes.*

The right of a prisoner under the laws of Georgia, to have a copy of the indictment, and a list of the witnesses who gave testimony before the Grand Jury, is waived by not making the demand *before* arraignment.

The Court on motion of the *Sol. Gen.* and upon reasonable notice to the prisoner, (charged with felony or with a crime, which might subject him to penitentiary imprisonment for three years,) will permit the names of witnesses to be indorsed on the indictment, who did not give testimony before the Grand Jury, and such witnesses may be examined before the Petit Jury.

But without such notice, such witnesses cannot be sworn or examined.

#### By CHARLTON, Judge.

BILLS of indictment have been found against the prisoners, for offences which may subject them to an imprisonment in the penitentiary, for a longer period than the term mentioned in 16th Sect. 11th Div. of the penal code. That section is in these words : " Every person charged with a felony, or any offence which may subject him, on conviction, to an imprisonment in the penitentiary for the term of three years, *shall* be furnished previous to his arraignment, with a copy of the indictment, and a list of the witnesses who gave testimony before the Grand Jury."

*After* the arraignment of these prisoners, their counsel applied for copies of the indictment, as a matter of right, under this section of our penal code. I then was of opinion, that the application came too late, for, though the language of the section was imperative and mandatory upon the prosecuting officer of the State, yet it was a right, *ex debito justitiæ*, only previous to arraignment. In other words, that the prisoners might refuse to be put upon their arraignment until furnished, as this section directs, with " a copy of the indictment, and a list of the witnesses who gave testimony before the Grand Jury ;" but that the neglect or

omission to demand this copy of the indictment and list of the witnesses *on* the arraignment, was a waiver of the right, and left it discretionary with Mr. Solicitor General, *after* arraignment, whether he would or would not furnish a copy of the indictment and list of witnesses.   This section of the penal code was borrowed from the criminal law of England, in relation to treason; and the opinion I expressed when the application was made in behalf of the accused, has since been strengthened and confirmed by reference to English authorities.   By the Stat. 7, W. 3, c. 3, it is enacted—that the prisoner shall have a copy of the indictment—(which includes the caption, but not the names of the witnesses,) five days at least before the trial, that is, upon the true construction of the Act, *before* his arraignment; for then is the time to take any exceptions thereto, by way of plea or demurrer. (*Fost.* 229, 230. *Dougl.* 590.)   By consenting to the arraignment, the prisoner admits that he has had a copy of the indictment, or waives the benefits he might otherwise claim under the section referred to, of the penal code of Georgia.   The statute of *William*, also directs, in cases of treason (it enumerates) that the prisoner *shall* have a copy of the panel or jurors, two days before his trial.   This statute is as imperative as the law of this State, and still it has been decided, "if there is any objection to this copy, it must be objected to before the plea.   For the copy is given the prisoner to enable him to plead; therefore, by pleading, he admits that he has had a copy sufficient for the purposes intended by the Act."   (4 *State trials*, 668.)   A similar concession is involved, under our system of criminal law, by neglecting, or omitting to demand copies of the indictment and list of witnesses, on the arraignment; for at that period, the prisoner pleads orally, which it is the duty of the Clerk to place upon the minutes.   One of the counsel for the prisoners, *Wayne*, has since expressed his acquiescence in the decision of the Court, and has referred me to a case in *Salkeld*, in support of it.   The doctrine now on this point, is settled, and will remain unshaken, until subverted by

[State vs. Calvin et. al.]

legislative interference. Another motion has been made by Mr. Solicitor before me, at Chambers, to permit him by order of Court, to indorse upon these bills of indictment, the names of five additional witnesses, one of whom could not have given testimony before the Grand Jury, because he was then in Charleston.

The motion is opposed and resisted by the counsel for the prisoners, upon a variety of grounds; by *Wayne* and *Cuyler*, because of its hostility to a decision of this Court, in a case tried at the last term, in which it is said, the Court determined, that no witness could be examined at the trial of the accused, whose name is not on the indictment, among the list of witnesses who gave testimony before the Grand Jury: by Mr. *D'Lyon*, because the decision in the case referred to, was subsequently acted upon, and confirmed in *Gates's* case, to whom a new trial was awarded, at the same term, upon the objection, that a witness was sworn and examined on his trial, whose name had not been indorsed on the bill of indictment, among the list of witnesses who gave testimony before the Grand Jury : and because adding these names now, would operate as an amendment, or alteration of the record, which could not be done in a criminal case; by Mr. *Wilde*, because indictments were not within the statutes of *Jeofail:* and these additional names upon the record, would, as contended for by *D'Lyon*, operate as an amendment; and because the motion, if acceded to by the Court, deprives the prisoners of all the kind and merciful benefits of the penal code, intended for them—the principal of which was, that the prisoner might have time to inquire into the characters of witnesses.

Mr. *Habersham*, of counsel for the prosecution, did not believe that the decision of the Court in the case referred to, went to the extent urged by the counsel for prisoners : and if it did, it ought to be considered as a *nisi prius* adjudication, which given under the impulses and suggestions of the moment, amidst the heat of forensic discussion, was always liable to errors ; and if it con-

[State vs. Calvin, et. al.]

tained any, upon the ulterior and grave reflection of the Court, it was its bounden duty to correct those errors, by its judgment delivered more deliberately.   It might be done on this motion and the public justice required that it should be now conclusively settled and understood, whether, under a sound construction of this section of the penal code, witnesses upon whose testimony the State might rely for a conviction, were prohibited from being sworn and examined before the Petit Jury, because they were not found in the list of witnesses who gave testimony before the Grand Jury.

Mr. *Bond*, the Solicitor General, said this motion could not be fairly viewed, if it was thought that it assailed the beneficent intention of the Legislature of Georgia.   The intention of the law was, and its reason was, to enable the prisoner or the accused to inquire into the character of the witnesses : that this motion, if granted, afforded an opportunity of making such inquiry, and that *therefore, the intention of the Legislature,* (which is admitted to be the foundation of every exposition of the penal code,) being ascertained, this motion could not be considered in violation of it. It was also urged in behalf of the motion, that the application to record the names of these witnesses did not militate against the decision in the case mentioned, because the witness in that case was rejected upon the objection, that no sufficient notice had been given of the intention to place her name on the indictment, among the names of the witnesses who had given testimony before the Grand Jury ; and that the distinction was supported by a decision of my predecessor.   Upon the weight of these reasons in support of and against the present motion, *I have now to decide*—1. whether such was the intention of the Legislature, as is contended for by the Solicitor General—and 2. whether that intention as contended for, is in accordance with the decisions of this Court.

1*st.* As to the intention of the Legislature.   It has been mentioned, (and therefore I am at liberty to say) that the penal code

PART I.—T.

of Georgia was framed by Mr. *Harris* and myself, under the appointment of the then Governor of the State.   We felt anxious to adopt the criminal law of our ancestors, to the republican institutions of this country, and with that feeling as the pole star of the duty confided to us, we endeavoured to place the accused upon as high a scale of dignity, as was dictated by the wide difference between a citizen of a republic, and the subject of a monarchy.   We consequently infused into the system (which the Legislature of Georgia did us the honor to adopt,) every principle of mercy and indulgence which that contrast suggested.   We placed a citizen of Georgia, or any person, committing an offence against her good order and government, (which inflicted upon him, or her, a penitentiary punishment for the term mentioned in this section of the code,) upon the same footing as a subject of England, charged with treason.   We considered that the best men, under the soundest impressions of moral, religious, and political obligations, might commit the crime of *treason*, who would from their souls abhor, and be the first to punish the unfortunate creature who had committed the offence of *petit larceny*.   Under this impression, we also thought, (at least I did,) that the privileges intended by the statutes of England to persons charged with treason, ought to be extended to persons charged with a felony, which subjected him to a penitentiary offence.   In short, that reason required the same indulgencies to the one, that were awarded to the other.   In *foro cæli* there could be no distinction.   Hence the introduction of this section into the penal code.   It was an adoption of the humane provisions of the British statutes, in relation to treason, which ought to apply to an American citizen, charged with felony.   The statutes of England to which I allude are the statutes of *Wm.* III, c. 3, and 7 *Ann*, c. 21.   The statute of *Wm.* requires, as before stated, that the prisoner shall have a copy of the indictment *before* his arraignment: and the statute of *Ann*, that the prisoner shall not only have a *copy* of the indictment, but a list of the wit-

nesses to be produced, and of the jurors impanneled, with their professions and places of abode, the better to enable him to make his challenges and defence. The reasons of the indulgencies are, that the prisoner may inquire into the characters of the witnesses and qualifications of the jurors. These are the reasons which influenced the framers of the code, and as I presume, the Legislature of Georgia.

2. As to the decisions of this Court.

I certainly decided at the last term in the case so repeatedly pressed upon my recollection, that a witness who had not been sworn to give testimony before the Grand Jury, could not be sworn and examined on the trial of the accused before the Petit Jury. My reason for this decision was founded upon the reason assigned by the British law, that the accused ought to have an opportunity of inquiring into the character of the witness. The sudden and unexpected presentation of the witness prevented this inquiry, and therefore she was rejected. This was the decision in the case, and it must, or ought to be remembered, by every person who heard the opinion. But suppose that notice had been given by Mr. Solicitor, that he intended to apply for a witness' name, to be recorded on the bill, which notice allowed time for an inquiry as to character, was not this a compliance with the requisition and object of the penal code? My predecessor has said that it would be, and, *cessante ratione, cessat et ipsa lex.* Mr. *Wilde,* of counsel for the prisoners, has pressed upon me the maxim *stare decisis,* that it is better erroneous decisions of the Court should be adhered to, than to be dependent on the contrarious oscillating opinions of this Court. I answer *stare decisis*— and upon that maxim this case under the present motion shall be decided.

It is therefore *ordered,* that the names of the witnesses mentioned in the motion of Mr. Solicitor, be recorded in the list of

[State vs. Calvin, et. al.]

witnesses on these bills of indictment who gave testimony before the Grand Jury.

For the State—BOND, Solicitor General, & HABERSHAM.   For the prisoners—WAYNE, CUYLER, D'LYON & WILDE.